UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKQULYNE SAVARD,

       Plaintiff,                   CIV. NO. 12-13857

    v.                         HON. TERRENCE G. BERG

UNITED STATES STEEL,         HON. MONA K. MAJZOUB

       Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT (DKT. 23)**

This is a gender discrimination and retaliation case, brought under Michigan's Elliot Larsen Civil Rights Act ("ELCRA"). Jackqulyne Savard ("Plaintiff") is a former employee of United States Steel ("Defendant"). Plaintiff claims that she was fired from her job because she is a woman and that she was retaliated against for filing an internal "EEO" charge complaining of discriminatory treatment by a supervisor, Shawn Gelisse.

Defendant has moved for summary judgment (Dkt. 23). Plaintiff filed a response (Dkt. 26) and Defendant filed a reply (Dkt. 27). The Court heard oral argument on Defendant's motion on August 8, 2013. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

# I.  BACKGROUND

At the outset, the Court notes that Plaintiff did not follow the Court's practice guidelines in responding to Defendant's motion for summary judgment.  The Court's practice guidelines for motions for summary judgment are available on the Court's website and provide as follows:

> A Rule 56 motion must begin with a "Statement of Material Facts." Such a Statement is to be included as the first section of the Rule 56 Motion. The Statement must consist of separately numbered paragraphs briefly describing the material facts underlying the motion, sufficient to support judgment. Proffered facts must be supported with citations to the pleadings, interrogatories, admissions, depositions, affidavits, or documentary exhibits. Citations should contain page and line references, as appropriate....  The Statement of Material Facts counts against the page limit for the brief. No separate narrative facts section shall be permitted.
>
> The response to a Rule 56 Motion must begin with a "Counter-statement of Material Facts" stating which facts are admitted and which are contested. The paragraph numbering must correspond to moving party's Statement of Material Facts. If any of the moving party's proffered facts are contested, the non-moving party must explain the basis for the factual disagreement, referencing and citing record evidence.  Any proffered fact in the movant's Statement of Material Facts that is not specifically contested will, for the purpose of the motion, be deemed admitted. In similar form, the counter-statement may also include additional facts, disputed or undisputed, that require a denial of the motion.[1]

Defendant's motion for summary judgment complied with the Court's practice guidelines, and listed 73 "Material Facts" with specific citations to the record. Plaintiff's response brief offered no "Counter-statement" and few citations to the record.  Without such a counter-statement, Plaintiff fails to identify clearly which of Defendant's 73 material facts are subject to dispute.[2]  The Court nonetheless

---

[1] Available at -- http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=459

[2] **Error! Main Document Only.**_See, e.g., Akines v. Shelby Cnty. Gov't_, 512 F. Supp. 2d 1138, 1147 (W.D. Tenn. 2007) (deeming the defendant's statement of undisputed material facts as having been

conducted a very thorough review of both parties' briefs, oral arguments, and exhibits and gleaned the following facts, which are viewed in a light most favorable to the non-moving party, Plaintiff:

Plaintiff began working at the Great Lakes Works facility in Ecorse and River Rouge for National Steel Corporation in 1995; she became a United States Steel employee when Great Lakes Works was purchased by United States Steel in 2003 (Dkt. 23, Ex. 1, Savard Dep., p. 10). From approximately 2004 to 2006, Plaintiff's supervisor was Oscar Augusti who, according to Plaintiff, engaged in sexually harassing activity directed toward Plaintiff and other female employees (Dkt. 19, Am. Compl. ¶¶ 6, 10). Plaintiff's last contact with Mr. Augusti was in April 2006 (Dkt. 23, Ex. 1, Savard Dep., pp. 18, 23-24).

After a plant-wide shut down in the summer of 2009, Plaintiff was assigned to a job that placed her in regular contact with Shawn Gelisse, a manager in the area in which she worked. Plaintiff contends that Mr. Gelisse is responsible for the gender discrimination alleged in Count I of her Amended Complaint (Am. Com., ¶¶ 1-12, Dkt. 23, Ex. 1, Savard Dep., p. 43; Dkt. 23, Ex. 2, Gelisse Aff. ¶ 4). Plaintiff does not allege that Mr. Gelisse made any sexually suggestive comments to her (Savard Dep., p. 52).

On February 21, 2010, Plaintiff filed an "EEO" complaint against Mr. Gelisse under the internal United States Steel/United Steelworkers Union joint civil rights program (Dkt. 19, Amend. Compl. ¶17). Plaintiff's complaint was investigated by a

admitted by the plaintiffs, where the plaintiffs failed to file a counter-statement of material facts, as directed by local rule).

joint union/management team, which interviewed Plaintiff and Mr. Gelisse; the committee concluded that there was insufficient evidence of discrimination to proceed further; Plaintiff chose not to grieve this conclusion (Dkt. 23, Ex. 3, Hickey Aff. ¶8).

In Count II of her Amended Complaint, Plaintiff alleges that she was retaliated against for filing this internal discrimination claim by being "disciplined multiple times (13 times)…between February 21, 2010[,] and January 26, 2012" (Dkt. 19, Amend. Compl. ¶19). The record shows that Plaintiff received 14 disciplinary charges between February 21, 2010, and January 26, 2012, although on 4 occasions she received two different citations arising from single incidents; thus, there were 10 incidents in this time frame for which she was "written up" for a total of 14 citations (Dkt. 23, Ex. 3, Hickey Aff. ¶ 10). In Defendant's disciplinary process, the maximum discipline that will initially be issued to an employee is a 5-day suspension; when a 5-day suspension is initially issued, Labor Relations then conducts a fact-finding, also known as a "9-b" hearing, after which the initial 5-day period may be converted to a higher, lower or sometimes maintained at the same level of discipline or discharge (*Id.* ¶ 12).

Following her "EEO" charge, Plaintiff received the following write-ups. On March 31, 2010, Mr. Gelisse wrote Plaintiff up for loading an incorrect coil of steel onto a railroad car, resulting in the car having to be brought back, the wrong coil unloaded, and the correct one loaded (*Id.* ¶ 12). Plaintiff admitted she loaded the wrong coil onto the car on this occasion (*Id.* ¶ 13). As a result of this incident,

4

Plaintiff was initially issued a 5-day suspension, which was reduced to a written warning after the 9-b hearing, and was ultimately rescinded completely following negotiations between Defendant and Plaintiff's union (*Id.* ¶ 12).

On April 2, 2010, Mr. Gelisse issued Plaintiff a citation in connection with a missing coil which she had initially processed, had later been asked to find, had reported its location as being in one building, and which was then found in a different building (Dkt. 23, Ex. 2, Gelisse Aff. ¶ 12; Hickey Aff. ¶ l4).  Labor Relations issued a 5-day suspension which, after the 9-b hearing, was reduced to a 1-day suspension and, after union-management negotiations, was reduced to a written warning (*Id.* ¶ l4).

On July 26, 2010, Mr. Gelisse wrote Plaintiff up for shipping an incorrect steel coil to a customer on July 14, 2010.  This error was discovered when the customer called to complain, and required Defendant to retrieve the wrong coil and re-supply the correct coil (Gelisse Aff. ¶ 14).  Plaintiff admitted shipping the wrong coil on this occasion (Dkt. 23, Ex. 1, Savard Dep., p. 125).  Based on this write-up, and Plaintiff's prior disciplinary history, Labor Relations issued a 3-day suspension, which, following negotiations between management and the union, was reduced to a 1-day suspension (Dkt. 23, Ex. 3, Hickey Aff. ¶ 15).

On October 25, 2010, Plaintiff received a citation from her shift foreman, Jon Wood, for failing to provide documentation of an absence (*Id.* ¶ 16).  Plaintiff was issued a 3-day suspension for this violation of Defendant's absence policy, and this

discipline became final when Plaintiff and her union did not grieve it (Id. ¶ 16).  Mr. Gelisse was not involved in this discipline (Dkt. 23, Ex. 2, Gelisse Aff. ¶ 15).

On November 4, 2010, Mr. Gelisse wrote Plaintiff up for shipping the wrong coil to a customer on October 23, 2010.  This citation involved two violations of the Great Lakes Works procedures Plaintiff was obliged to follow (*Id.* ¶ 16).  Plaintiff admitted that she had shipped the wrong coil on this occasion (Dkt. 23, Ex. 1, Savard Dep. p. 131).  Labor Relations issued an initial 5-day suspension for violation of procedures and unsatisfactory job performance, which was affirmed after the 9-b hearing and the grievance process; Plaintiff and her union accepted this decision (Dkt. 23, Ex. 3, Hickey Aff. ¶17).

On August 10, 2011, Mr. Gelisse issued a write-up to Plaintiff for shipping the wrong coil to a customer on July 31, 2011, again citing her for two violations of the procedures she was to follow (Dkt. 23; Ex. 2; Gelisse Aff.  ¶16).  Plaintiff acknowledged that she signed the shipping documents identifying the coils being shipped, but contends that the truck had been loaded by a previous shift and that an unnamed person told her to release the load without verifying it (Dkt. 23; Ex. 1; Savard Dep. p. 146).  Labor Relations issued an initial 5-day suspension for this incident, which was converted to discharge after the 9-b hearing; but thereafter, the discipline was rescinded when Plaintiff's union pointed out that time deadlines for proceeding with discipline under the Basic Labor Agreement had not been met (Dkt. 23, Ex. 3, Hickey Aff. ¶ 18).

On September 21, 2011, Plaintiff was written up by her shift supervisor, Paul

6

Urchick, for punching in late to work; this write-up stated that Plaintiff had "a history of this behavior" (*Id.* ¶ 19).

On October 12, 2011, Plaintiff was again written up by Mr. Urchick for punching in late to work (*Id.* ¶ 20). Plaintiff admitted her lateness on both September 21, 2011 and October 12, 2011 (Dkt. 23, Ex. 1; Savard, Dep. pp. 151, 158), and further admitted to "chronic tardiness" in 2011 (*Id.* p. 155). Labor Relations issued initial 5-day suspensions for each of the lateness incidents, both of which were converted to discharge after the 9-b hearings (Dkt. 23, Ex. 3, Hickey Aff. ¶¶ 19, 20). After Plaintiff grieved the two discharges arising from her tardiness, both were affirmed following a second step hearing, and then settled in tandem in an agreement between management and Plaintiff's union, resulting in a single 30-day suspension (*Id.* ¶ 21).

On December 7, 2011, Mr. Gelisse wrote Plaintiff up for violating a company procedure and for unsatisfactory work performance in connection with an incident in the annealing area, where Plaintiff then worked, in which she failed to properly disengage a gas line from an annealing furnace, resulting in damage to the furnace and the gas line, and a safety hazard when the furnace was lifted by crane and caught the gas line (*Id.* ¶ 22). Though Plaintiff claimed that she had disengaged the gas line, she acknowledged that she was in the wrong position to observe whether the furnace and gas line were completely detached or became "hung up" when the furnace was lifted (Dkt. 23, Ex. 1, Savard Dep., pp. 169, 174). Labor Relations issued an initial 5-day suspension for this incident, which was converted to

7

discharge following the 9-b hearing, and then affirmed after the second and third steps of the grievance process, during which Plaintiff admitted that she had "messed up" and that it was "my fault" (Dkt. 23, Ex. 35, Second-Step Grievance Minutes).[3]

On February 9, 2012, Mr. Gelisse issued Plaintiff a citation for unsatisfactory work performance on January 26, 2012 when she failed to properly verify that the correct coils were being annealed, thus resulting in one coil being annealed contrary to customer specifications and another coil not being annealed at all (Dkt. 23, Ex. 3, Gelisse Aff. ¶ 20; Ex. 37, Employee Activity Report). Plaintiff contended that a worker on a previous shift had loaded the coil in question, but did not dispute that the wrong coil was annealed (Dkt. 23, Ex. 1, Savard Dep., pp. 184-186; Gelisse Aff., ¶ 20; Ex. 38, Notification of Discipline). Labor Relations issued an initial 5-day suspension in connection with the January 26 incident, which was converted to discharge following the 9-b hearing and affirmed at the second and third steps of the grievance process (Dkt. 23, Ex. 3, Hickey Aff. ¶ 23, 24; Ex. 40, Second-Step Grievance Minutes). After the third step of the grievance process in connection with Plaintiff's discharges for the incidents involving the furnace and annealing of the wrong coil, Plaintiff's union indicated that her discharges would be taken to arbitration; but in August, 2012, the union withdrew its arbitration demand, thus

---

[3] Plaintiff was not immediately discharged for this infraction; while the grievance/appeal process was pending for the incident involving the annealing oven, the January 26, 2012 incident occurred. Both the December 7, 2012 and January 26, 2012 incidents where handled simultaneously, and led to Plaintiff's final discharge (August 8, 2013 Hearing Transcript, pp. 9-10).

8

making her discharges final (Dkt. 23, Ex. 3, Hickey Aff. ¶ 24; Exs. 42, 43, Arbitration Demand and Withdrawal).

## II. ANALYSIS

### A.  The Standard for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. Proc. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law.  *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

## B.  The Elliot Larsen Civil Rights Act

Michigan's Elliot Larsen Civil Rights Act (ELCRA) prohibits employers from discriminating against any individual on the basis of gender.  *See* MCL § 37.2102 *et seq*.  Plaintiff may establish gender discrimination by either presenting circumstantial or direct evidence.  *See Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *Harrison v. Olde Financial Corp.*, 225 Mich. App. 601, 610 (1997). Where there is only circumstantial evidence, Plaintiff must use the *McDonnell Douglas* burden shifting analysis to establish a *prima facie* case of discrimination by showing: (1) that she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) she was treated differently from similarly situated employees from a non-protected class or replaced by a person not a member of her protected class.  *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

If Plaintiff proves a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *See McDonnell Douglas*, 411 U.S. at 802. Even though the burden of going forward is on the defendant once a plaintiff has established a *prima facie* case, the ultimate burden of persuasion never shifts from the plaintiff. *Id.* Once the employer carries this burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* Plaintiff can meet this burden by showing: (1) that the stated reasons had no basis in fact; (2) that the stated reasons were not the actual reasons; or (3) that the stated reasons were insufficient to explain the employer's action. *See Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always, remains, however, with Plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

A three-year statute of limitation applies to ELCRA claims. *See* MCL § 600.5805(10); *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 472 Mich. 263, 278 (2005).

### C.  Plaintiff Fails To Raise a Genuine Issue of Material Fact

Plaintiff's Amended Complaint (Dkt. 19) contains two counts under the ELCRA: (1) gender discrimination, based upon "sexually suggestive and demeaning language" from Mr. Augusti, and being given "subservient job assignments;" and (2) retaliation for filing the February 21, 2010 EEO charge against Mr. Gelisse.  During

11

oral argument on Defendant's motion for summary judgment, Plaintiff significantly narrowed the focus of her claims.  Specifically, she acknowledged that any potential sexual harassment claims against her prior supervisor – Mr. Augusti – and any claim related to being given undesirable job assignments or failing to receive certain promotions or transfers were barred by the statute of limitations.  The precise colloquy at oral argument went as follows:

> THE COURT:  Could you address the issue of your gender claims as well, and in particular, there are a number of matters that were addressed in the deposition and that are alluded to in your first count about other job assignments, opportunities for promotions, transfers, and that sort of thing; that it appears, in looking at your response to the Summary Judgment motion, that you're no longer pursuing those as gender-based discrimination issues but rather you're focusing strictly on the matter of the disciplinary actions that were taken as being motivated by gender.  So my question to you is, do you concede that these other matters can't be shown, that you can't raise a genuine issue of material fact, that they were motivated by some type of gender discrimination?
>
> MR. MEIER:  When we took the deposition of the Plaintiff, we realized at that point -- this was before our amended complaint, we realized that those -- those complaints occurred with a different supervisor outside the Statute of Limitations.  And I believe on my amended complaint, I don't think I raised those again.  I think I took that off of the amended complaint.  I talked to defense counsel at the end of the deposition and he agreed to give me -- allowing an amended complaint and at that time, I took those off.
>
> THE COURT:  Okay.  So you're focusing on the matter of the repeated disciplinary infractions rather than on the different job assignments that she had, is that right?
>
> MR. MEIER:  Right, that's correct.

(August 8, 2013 Hearing Transcript, pp. 25-26)

Plaintiff thus bases her gender discrimination and retaliation claims on the 14 instances in which she was disciplined in the two years between the filing of her internal civil rights claim on February 21, 2010, and her final discipline incident on January 26, 2012.  Although 14 disciplinary charges were issued, they arose from 10 incidents, as follows:

- March 31, 2010 (write-up by Gelisse):  Plaintiff loaded wrong coil on railroad car; Plaintiff admitted infraction; discipline rescinded;

- April 2, 2010 (Gelisse):  Plaintiff written up for misidentifying location of a coil she was asked to locate; written warning;

- July 26, 2010 (Gelisse):  Plaintiff shipped wrong coil to a customer; Plaintiff admitted infraction; 1-day suspension;

- October 25, 2010 (Wood):  Plaintiff failed to provide adequate documentation of an absence; 3-day suspension, not grieved by Plaintiff;

- November 4, 2010  (2 charges) (Gelisse):  Plaintiff shipped wrong coil to a customer; Plaintiff admitted infraction; 5-day suspension;

- August 10, 2011 (2 charges) (Gelisse):  Plaintiff shipped wrong coil to a customer; Plaintiff admitted wrong coil had been shipped and she had signed shipping documents, but blames unknown fellow employee; discipline rescinded due to failure to comply with contractual time deadline;

- September 21, 2011 (Urchick):  Plaintiff punched in late for work; Plaintiff admitted infraction; discharge reduced to 30-day suspension (in tandem with October 12, 2011 discipline, below);

13

- October 12, 2011 (Urchick):  Plaintiff punched in late for work; Plaintiff admitted infraction; discharge reduced to 30-day suspension (in tandem with September 21, 2011 discipline, above);

- December 6, 2011 (2 charges) (Gelisse):  Plaintiff failed to properly disengage gas line from annealing furnace, resulting in damage to equipment and safety hazard; Plaintiff admitted infraction; discharge;

- January 26, 2012 (2 charges) (Gelisse):  Plaintiff caused wrong coil to be annealed; Plaintiff admitted wrong coil was annealed and that she failed to verify that correct coils were included, but blames unknown fellow employee; discharge;

Of these 10 incidents, the two in closest proximity to Plaintiff's EEO charge resulted in no discipline (*i.e.,* any discipline was rescinded).  Thus, these two incidents appear inconsequential, since a materially adverse employment action "'must be more disruptive than a mere inconvenience or an alteration of job responsibilities,'" and a materially adverse change might be indicated by "'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)).  Employer investigations into suspected wrongdoing by employees, standing alone, generally do not constitute adverse employment actions.  *See Dendinger v. Ohio*, 207 F. App'x.

14

521, 527 (6th Cir. 2006); *Bivins v. U.S. Pipe & Foundry Co.*, 48 F. App'x. 570, 572 (6th Cir. 2002) ("[T]he district court correctly concluded that mere investigations by an employer do not constitute adverse employment actions").  It was more than five months after filing her February 21, 2010 EEO charge that Plaintiff received a write-up that resulted in a 1-day suspension (on July 26, 2010).  Furthermore, three incidents arose from reports by managers other than Mr. Gelisse, whom Plaintiff alleges was the primary retaliator.

### i)  *Plaintiff's Retaliation Claim*

In order to make out a *prima facie* case for retaliation under the ELCRA, Plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the defendant was aware the plaintiff engaged in that activity; (3) the defendant took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action.  *See Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000).  Although Michigan courts assess claims of retaliation under the ELCRA using the same general framework as that used by federal courts, *see West v. General Motors Corp.*, 469 Mich. 177 (2003) (citing federal cases), the standard for causation is higher.  The Michigan Court of Appeals has held that "[t]o establish causation, the plaintiff must show that h[er] participation in activity protected by the [EL]CRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two."  *Barrett v. Kirtland Cmty. Coll.*, 245 Mich. App. 306, 316 (2001).

15

There is no dispute that Plaintiff can establish two of the four requirements of a *prima facie* case – that she engaged in protected activity (the EEO charge) and that Defendant took adverse employments actions against her (multiple suspensions, then termination).  Defendant contends, however, that Plaintiff has not raised a genuine issue of material fact as to whether the person who imposed the disciplines (Ms. Hickey) had knowledge of Plaintiff's EEO charge and whether Plaintiff can demonstrate that there is a causal relationship between her protected activity and the disciplines she received.  The Court finds that Plaintiff is unable to establish causation, and thus finds it unnecessary to consider the issue of Ms. Hickey's knowledge of Plaintiff's EEO charge.

As to causation, Plaintiff has not produced sufficient evidence for a jury to reasonably infer a causal connection between the filing of her EEO complaint and her subsequent disciplinary actions and eventual termination.  Other than Plaintiff's own conclusory allegations, no evidence has been adduced by Plaintiff to suggest that she was disciplined or fired in retaliation for her filing of the EEO complaint.  Plaintiff claims that indicia of retaliatory conduct can be found through a "simple statistical analysis" which led to her termination and the fact that they constitute unfair increased disciplinary scrutiny (Dkt. 26 at 5-6).  In this vein, Plaintiff avers that she received 6 disciplines between 1995 and 2003 (roughly one per year) and 8 disciplines between 2003 and 2010 (again, roughly one per year).  Plaintiff then points to the 14 disciplines she received in the two years between the filing of her internal civil rights claim on February 21, 2010, and her final discipline

16

incident on January 26, 2012, and urges the Court to infer a causal connection based upon the numerical increase of disciplines alone.

Plaintiff fails, however, to present any independent evidence to support a finding that any of the disciplinary actions were motivated by retaliation. Indeed, as noted above, Plaintiff conceded the validity of most of the charged disciplinary violations that she received after filing her EEO complaint.[4]  Likewise, Plaintiff failed to offer any evidence suggesting that her workplace conduct was being more closely scrutinized[5] than that of similarly situated employees who had not filed EEO complaints.[6]  Although Plaintiff claims that the increased frequency of the warnings and suspensions she received after filing her EEO complaint demonstrates that she was being disciplined more often than others, Plaintiff has provided no evidence of Defendant's disciplinary actions against other employees to enable the jury to make such a comparison. In short, rather than setting forth specific facts which would justify an inference of causation, Plaintiff has only offered unsupported allegations that the disciplines she received were in retaliation for her EEO complaint.  Where the record contains undisputed evidence that the disciplinary actions were based on

---

[4] Plaintiff's actual commission of the infractions charged also provides a legitimate, non-retaliatory reason for the discipline imposed.  "[A]n employee's work violations constitute a legitimate, nondiscriminatory reason for adverse employment decisions." *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998).

[5] Evidence of increased scrutiny can establish a causal connection in retaliation cases.  *See Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009).

[6] The one piece of evidence that Plaintiff did submit is a statement from a male crane operator (Christopher Thompson) that suggests that Mr. Thompson was not disciplined as harshly as Plaintiff for shipping the wrong coil of steel on July 31, 2011 (Dkt. 26, Ex. 3; Statement of Mr. Thompson). However, as discussed in greater detail below, Plaintiff cannot establish that she was similarly situated to Mr. Thompson, because it was not his job, as the crane operator, to ensure that the correct coil was loaded.

Plaintiff's admitted misconduct, bare allegations that the actions were motivated by retaliatory animus, rather than legitimate reasons, do not create a genuine issue of material fact.

Finally, while it is generally accepted that an adverse action taken shortly after an employee engages in protected conduct supports an inference of retaliation, *see Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), the Sixth Circuit has held that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) (rejecting the plaintiff's claim that a two-month proximity between an EEOC charge and an alleged adverse employment action constituted sufficient evidence of causation).  Here, the first challenged disciplinary action occurred in March 2010, some 40 days after Plaintiff filed her EEO charge in February of that year.  While this first discipline was near in time to the EEO charge, temporal proximity alone is not sufficient to prove a retaliatory motive.  Furthermore, the March 2010 discipline was eventually rescinded through the grievance process.  The first discipline that resulted in a "materially adverse employment action" (a 1-day suspension) occurred in July 2010, more than 5 months after Plaintiff filed her EEO charge; Plaintiff was terminated approximately two years after filing her EEO charge.[7]

---

[7] Moreover, the pattern of disciplinary actions contains a nearly year-long gap in time between November 2010 and August 2011, during which time Plaintiff had no disciplinary actions filed against her.  While the disciplinary actions that occurred from March 31 – November 10, 2010 were closer in time to the February 2010 EEO complaint, it strains credulity to infer that the disciplinary actions beginning in August 2011 and continuing through January 2012 were motivated by an EEO complaint filed back in February of 2010 and resolved after a joint union/management committee

18

In this case, the evidence overwhelmingly demonstrates that the primary reason Plaintiff received these disciplines was that Plaintiff had, in fact, committed the infractions. In response to Defendant's motion for summary judgment, Plaintiff has presented no evidence that her protected activity influenced or affected her discipline in any way, much less that her EEO charge was a "significant factor[8]" in the discipline she received; rather, she has presented the facts that she filed an internal civil rights complaint and that she was thereafter disciplined. The fact that one event preceded the other does not suggest that the first caused the second, or that they were in any way related. Where Defendant has produced evidence supporting an independent and non-retaliatory justification for each disciplinary action, some contrary proof must be offered by Plaintiff beyond merely pointing out the timing of the events. In the absence of such proof creating a material issue of fact, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### ii) *Plaintiff's Disparate Treatment Claim*

Plaintiff's gender discrimination claim centers on her contention that she was disciplined more harshly than a crane operator, for the same alleged conduct in the July 31, 2011 incident involving shipping the wrong coil of steel.[9] Defendant

---

concluded that there was insufficient evidence of discrimination to proceed further, and Plaintiff did not grieve this decision.

[8] "To establish causation, …[P]laintiff must show that h[er] participation in activity protected by the [EL]CRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two."  *Barrett v. Kirtland Cmty. Coll.*, 245 Mich. App. 306, 316 (2001).

[9] As noted above, Plaintiff abandoned any gender discrimination claim related to the "terms and conditions of [her] employment," including allegations of harassment by a supervisor with whom she dealt more than six years before she filed her complaint (Dkt. 19, Amend. Compl. ¶¶ 6, 10; Dkt. 23, Ex. 1, Savard Dep. at 18, 23-24), as well as "subservient job assignments" and denials of transfers

responds that the crane operator is not "similarly situated" to Plaintiff, since it was not his responsibility to verify that the correct coil of steel was being loaded (Dkt. 27, Ex. 44, Gelisse Supp. Aff. ¶ 3).  Defendant's argument is well-taken.

In order to show disparate treatment, Plaintiff must identify some other individuals with whom she seeks to compare her treatment by the same supervisor, and she has failed to do so.  *See, e.g., Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by [the] plaintiff's own opinions, cannot withstand a motion for summary judgment").  Plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly situated." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002).  However, to be deemed "similarly situated," the Sixth Circuit has stated that the non-protected individuals with whom Plaintiff seeks to compare her treatment must have: (1) "dealt with the same supervisor;" (2) "been subject to the same standards;" and (3) "engaged in the same conduct without

---

and promotions, allegedly because of her gender (Amend. Compl. ¶¶ 10-12).  At deposition, Plaintiff testified that by "subservient job assignments," she was referring to two situations, involving her ability to obtain overtime and the fact that she was assigned to dump trash in her work area (Amend. Compl. ¶ 11; Savard Dep. at 71, 93).  She also testified at deposition that the promotions and transfers she believes she was denied were: a delay in being assigned to crane school, two attempts to obtain jobs in the temper mill, and a delay in obtaining a transfer to the annealing job (Amend. Compl. ¶ 12; Savard Dep. at 84-88, 89).  During oral argument, Plaintiff's counsel conceded that these claims were barred by the ELCRA's three-year statute of limitations.  Furthermore, Plaintiff's response brief (Dkt. 26) did not address Defendant's arguments concerning these allegations in any meaningful way, therefore she has abandoned these claims.  *See Larimore v. Grant*, No. 3:03CV664-S, 2006 WL 2037390, n.3 (W.D. Ky. July 17, 2006) (declaring claim abandoned where the plaintiff failed to address the claim in brief in opposition to defendant's motion for summary judgment, but addressed other claims); *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F.Supp.2d 926, 931 n.7 (S.D. Ohio 2004); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F.Supp.2d 789, 798 n.7 (W.D. Mich. 1999).  Therefore, the Court will focus solely on Plaintiff's contention that she was disciplined more harshly than the crane operator for the events that occurred on July 31, 2011.

such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). "Differences in job titles, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated[.]" *Leadbetter v. Gilley*, 385 F.3d 683, 691–92 (6th Cir. 2004).

Here, Plaintiff has not raised a genuine issue of material fact as to whether the crane operator was similarly situated to her and was treated more favorably than she was, for the same alleged conduct. In a supplemental affidavit, Mr. Gelisse testified that:

> As crane operator, Mr. Thompson was stationed in a crane above the level where the coils were picked up and loaded onto trucks or rail cars. The crane operator's job is to pick up and load coils identified by the loader – in this case, [Plaintiff]. The loader has the information and training necessary to determine which coils are to be shipped; the crane operator does not. Under U.S. Steel [procedures], the loader is to verify the tag on the coil being shipped to ensure that it is the right coil, to measure the width of the coil being shipped to make certain that it is correct, and then to double-check the coils after they are loaded to make sure the right coil is in the right truck or rail car. With respect to the coil shipped on July 31, these obligations were entirely the responsibility of [Plaintiff] as loader; the crane operator, Mr. Thompson, was responsible only to load the coils designated by the loader. As a result, when on August 10 we learned that the wrong coil had been shipped on July 31, [Plaintiff] alone was written up, since the crane operator bore no responsibility for the error.

(Dkt. 27, Ex. 44, Gelisse Supp. Aff. ¶ 3). The written statement from Mr. Thompson that Plaintiff produced stated:

> To whom it may concern,
> I worked with [Plaintiff] on 1st turn July 31st 2011. The coils we loaded were already marked + tagged when we got there. We were told to just loan then in the cars + thats (sic) what we did.

(Dkt. 26, Ex. 3, Thompson Statement).  This statement fails to rebut Defendant's contention that it was *Plaintiff's* responsibility (as the loader) and not Mr. Thompson's responsibility (as the crane operator) to verify that the correct coils were loaded.  The record thus shows that Plaintiff and Mr. Thompson had different titles, duties, and responsibilities in connection with the task they were carrying out.  The evidence establishes that Plaintiff and Mr. Thompson were not similarly situated, and Plaintiff offers no contrary proof that suggests otherwise.   As a result, Defendant is entitled to summary judgment on Plaintiff's gender discrimination/disparate treatment claim.

### III.  CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Dkt. 23) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  October 1, 2013

Certificate of Service

I hereby certify that this Order was electronically submitted on October 1, 2013, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager